Williams, J.
The question in the case is whether, upon the following state of facts, the vendor’s lien asserted by the defendant in error is entitled' to priority over the liens of certain judgments recovered against the vendee by the plaintiffs in error.
On the second day of July, 1883, the defendant in error, Solomon Albright, then the owner of a tract of 1 and m Paulding county, sold and conveyed it to William Albright for the price of six hundred dollars, for which the purchaser gave his three notes, payable in four, five and six years, respectively, from that date. The deed was placed on record and the purchaser went into possession. The notes having become due and being unpaid, Solomon Albright, on the sixth day of November, 1895, brought the action below to recover judgment on the notes and enforce his lien on the land. From 1890 to 1893, William Albright became indebted to L. Miller and J. B. Baxter jointly, and to F. W. Hyman, and Emmett Barnes severally, in various small amounts, upon which judgments were recovered in 1894, and 1895, and executions issued on them were levied on the land. The judgments of Miller and Baxter were recovered in the court of common pleas, and those of the other two creditors before justices of the peace, and transcripts-were filed with the clerk on which the executions were issued. These judgment creditors were made parties to the action brought by Solomon Albright, in which they set up their respective liens and asked that they be given preference over the lien of the plaintiff. The indebtedness upon which the judgments were rendered accrued while the debtor appeared of record to be the owner of *50 the land, and the creditors were without knowledge that the purchase price of the land was unpaid; and, in an action brought by them a judgment was obtained setting aside as fraudulent a conveyance made of the land by' their-debtor; but Solomon Albright was not a party to that suit, nor does it appear that he had any knowledge of it, nor that any further proceedings were had after the deed ■was set aside.
The existence and validity of the plaintiff’s lien are undisputed; but its priority is contested on the grounds, (1) that by the levy of their executions the judgment creditors obtained an advantage at law; and (2) that they have the better equity because credit was given the vendee by them on the faith of his apparent ownership of the land, and, by reason of the delay of the vendor in the enforcement of his lien.
The supposed classification of the liens of vendors suggested in argument, into those existing before, and those arising when the conveyance is made, and denominating the latter a grantor’s lien as distinguished from the former, is critical, but unimportant, and can serve no useful purpose in solving the question before us. Until conveyance made the vendor retains his whole estate in the land, which cannot properly be called a lien. True; he may tender. a conveyance and look to the land as a security for the purchase money, and enforce payment by subjecting the land, or any property of the vendee, to sale for that purpose. But, as said by a learned author, it is a complete misuse of legal terms to call the interest of the vendor a lien when it is the full legal estate. The lien proper of the vendor arises only upon conveyance, and in that sense the term is generally employed *51 and. well understood. It was observed by Read, J., in Brush v. Kinsley, 14 Ohio, 21, 23, that: “Before the legal title passes from the vendor on a contract for the sale of land, there is no such thing as a lien. The vendor’s remedy, in such case, is upon the contract, either to enforce specific performance, or in an action at law. The vendee cannot compel a relinquishment of the legal title until he has clothed himself with the equity by the payment of the purchase money. ” The superiority of the vendor’s lien in that, its proper sense, over the liens of judgments recovered against the vendee, though recovered on indebtedness contracted without notice, whatever the rule may be elsewhere, has been maintained in this state from an early period in its history; certainly as early as Patterson v. Johnston, 7 Ohio, 225. The absolute justice of the lien against the vendee and those who take under him with notice, is indisputable. Common honesty requires that one who buys land of another should pay for it, or, if he does not, that the land should be held for whatever he fails to pay. In equity the vendee holds the legal title in trust for the vendor, and has no beneficial interest in the land except to the extent of any excess that may remain after full payment of the purchase money. And, it is a well established rule that the lien of a judgment attaches only to such beneficial interest in land as the judgment debtor has at the time of its rendition; and, when the rule is not otherwise affected by statutory regulation, as in cases of mortgages and other instruments which become effectual against third persons only on proper registration, the judgment lien is subject to all equities concerning the land which could be successfully asserted against the debtor. This *52 rule is declared in Tousley v. Tousley, 5 Ohio St., 87, where it is said that so far as the statute goes in giving a judgment creditor preference over mortgages not perfected by delivery to the recorder, “his rights are absolute, but for everything else he is remitted to general principles, and on general principles it is very clear that he acquires a lien only upon the interest of his debtor, and is bound to yield to every claim that could be successfully asserted against him.” Hence, the lien of the vendor must be as effectual against the judgment creditor who simply succeeds to the interest of the vendee in the property, as it is against the vendee himself. The vendor and the party holding the judgment being equally meritorious creditors, the former has the better equity, because so much of the land as is necessary to pay the amount due him on the purchase price is in equity his property, which ought not to be taken for the payment of another’s debt. The levy of an execution issued on the judgment adds nothing to the dignity of the lien, or the equity of the creditor. It is merely a step in the enforcement of the judgment or for the preservation of the lien, and has no other effect than to limit the lien to the property levied on when that is sufficient to satisfy the judgment. The levy, like the judgment, reaches nothing more than the interest which the debtor has in the property. In Boos v. Ewing, 17 Ohio, 500, where a vendor’s lien was given preference over judgment liens, not only had executions been levied, but the land had been sold by the sheriff and the proceeds were in the hands of the court awaiting confirmation of the sale. The court said, “the land it is true has been levied upon and sold on the execution, yet the sale is not confirmed nor *53 the money paid into the hands of the judgment creditor. Ib is yet in the custody of the court, where it is held for the use of the one having the better claim. The vendee, creditors, and purchaser are in court. None of them have any desire that the sale should be set aside. They, together with the complainant, wish it confirmed. Why should the court refuse then to do what equity requires, and secure complainant the benefit of his lien in this form, and to the creditors the surplus? Certainly' he came not too late to preserve his equitable right, because he came before confirmation and in time to prevent it if necessary; and in time also to prevent the bidder at sheriff’s sale from placing himself in the condition of a purchaser without notice. Before confirmation he might interfere, after that it would perhaps be too late.”
Nor, is it perceived how the equity of the judgment creditors in this case was enlarged by the decree setting aside the fraudulent conveyance made by their debtor. The decree left the title in the debtor as if the conveyance had not been made, subject to the liens as they had theretofore existed, and the order of their priority was not disturbed.
Creditors of the vendee who become such while the title appears of record in his name presumably extend credit to him on the faith of his property responsibility; and the claim that they acquire an equitable right to have the land applied to their debts in preference to that due the vendor who by the execution and delivery of the deed enaoles the vendee to obtain credit, rests, it is contended, on the principle that a loss which must fall on one of two innocent parties from the act or default of a third person, should be borne by him who has been *54 instrumental in producing the condition which caused the loss. This has always been forcibly urged as a serious objection to the allowance of a vendor’s lien as against creditors without notice, and it has prevailed in some jurisdictions, but not in this state. If it were an original question here it would challenge the most careful consideration. The objection lies equally to all equitable liens of which there is no record, or actual notice, and in some measure has received legislative approval. It has been so far adopted in our legislation as to deny priority to equitable and unrecorded mortgages over judgment liens, but as yet the rule which has hitherto prevailed with respect to vendor’s liens remains mndisturbed. This is not without significance as a legislative recognition of the rule, especially in view of its long continued application in this state within the cognizance of the legislative body whose province it is, rather than of the courts, to make a change if one were deemed advisable. The rights of a vendee under a contract of purchase before conveyance, stand on much the same footing as those of a vendor after conveyance. In each case the one holds the land in trust for the other; and the vendee, to the extent that he has paid the purchase money, is preferred to creditors of the vendor who without notice of the unrecorded contract of purchase extend to him their credit, and recover judgments against him while the legal title remains in him. White v. Denman, 1 Ohio St., 111, 112; Lefferson v. Dallas, 20 Ohio St., 68. In both instances the parties deal with specific property, while general creditors do not, though they have actual knowledge of the recorded title, and have the property in view as a means of enforcing collection of the debt. Their *55 position is essentially different from that of a purchaser. It is obvious that actual knowledge by a judgment creditor when the indebtedness due him was incurred, that the title to the land appeared of record in the name of the vendee, and an expectation to look to the land as a means of obtaining satisfaction of his debt, can give him no greater rights than those of other creditors without such knowledge or expectation. In contemplation of law all have notice of what the record discloses, and tlieir expectations are immaterial; each stands on an equality with the others in this respect, and the liens of all alike are subordinate to that of the vendor»
There is then nothing in the case that takes it out of the established rule which accords preference to the lien of a vendor for unpaid purchase money over judgment and execution liens, or that should deprive the defendant in error of the relief awarded him, unless some ground for doing so is to be found in his delay in instituting the action below. The three purchase money notes matured in July, 1887, 1888 and 1889, respectively, and the action was commenced in November, 1895, a period of something over six years, after the maturity of the last note. It is not shown . nor charged that the plaintiff by any act or declaration caused anyone to believe the debt had been paid, nor that' the delay was from any bad faith or improper motive, nor otherwise than from mere indulgence of the debtor. That the purchase money was payable in installments instead of a gross sum is unimportant, and no action could be brought until one of the notes matured. The debts due the plaintiffs in error on which their judgments against the vendee were recovered, were contracted at differ *56 ent times between 1890 and 1894, and whatever of foundation there is for the supposed equity they seek to maintain, grew out of the fact that credit was given the vendee in reliance on his apparent record title, and the equity therefore arose, if at all, at the time the debt was contracted, and not from anything that occurred subsequent to that time; so that, it must necessarily be as strong in favor of one who became a creditor of the vendee within a year or a-month after the maturity of the purchase money, as it is in favor of one becoming a creditor any number of years afterward, short of the statutory bar. And, as observed by Burnett, J., in Tiernan v. Beam, 2 Ohio, 383, 387, it is not readily seen “by what rule of construction a limitation can be applied to the equitable, that does not equally affect the legal right. The security for the debt should be as permanent as the debt itself. They ought to exist and expire together. The object of the one was to insure the enjoyment of the other. The lien was intended to prevent one man from enjoying the property of another without consideration. ” In Patterston v. Johnston, supra, the lien of a vendor was upheld and. given preference over judgments against the vendee after a period much longer than in this case had elapsed between the time the deed was recorded and the contracting of the debts on which the judgments were recovered, as well as between the maturity of the purchase money and the bringing of the action.
The lien subsists against the vendee until the debt for the purchase money is paid or barred; and there is no reason why it should not so continue against judgment creditors who succeed only to the property interest which the vendee has in the *57 land. The plaintiff’s debt was not barred, nor his equity stale; and the judgment below directing its payment out of the proceeds, of the land, in preference to the claims of the plaintiffs in error is

Affirmed.

Minshall, J., dissents.